**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MAURICE ADAMS,

          Petitioner,

v.

UNITED STATES OF AMERICA,

          Respondent.

_____/

Civil No. 04-73412
Criminal No. 00-80797
Hon. Gerald E. Rosen
Magistrate Judge Donald A. Scheer

**OPINION AND ORDER DENYING**
**PETITIONER'S MOTION TO VACATE SENTENCE**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     March 21, 2008

PRESENT: Honorable Gerald E. Rosen
                United States District Judge

On February 5, 2003, Petitioner Maurice Adams pled guilty pursuant to a written

Rule 11 agreement to a two-count superseding criminal information charging him with

embezzlement in connection with health care, in violation of 18 U.S.C. § 669, and tax

evasion, in violation of 26 U.S.C. § 7201. Following an August 18, 2003 sentencing

hearing, the Court entered a judgment on September 18, 2003, sentencing Petitioner to

concurrent 33-month terms of imprisonment for each of the two counts of conviction.[1]

Petitioner did not appeal from this conviction and sentence.

---

[1]The Court subsequently entered an amended judgment on September 25, 2003, which
imposed the same sentence but corrected a clerical error in the initial judgment.

Through the present motion, Petitioner now challenges his conviction and sentence under 28 U.S.C. § 2255, arguing that his counsel provided ineffective assistance at sentencing, and that his guilty plea and sentence violated his Fifth Amendment right to due process, his Sixth Amendment right to a jury trial, and his Fifth Amendment right of presentment to a grand jury. This motion was referred to Magistrate Judge Donald A. Scheer for a report and recommendation (R & R), along with a number of other motions subsequently filed by Petitioner. In the resulting R & R, the Magistrate Judge recommends that Petitioner's motion be denied as untimely filed outside the one-year period of limitation for bringing motions under § 2255. The Government has objected to the R & R, contending that Petitioner's motion was timely filed, but that this motion nonetheless should be denied on the merits for the reasons identified in the Government's response to the motion.

Having reviewed Petitioner's motion, the Government's response, the Magistrate Judge's R & R, the parties' other submissions, and the record as a whole, the Court now is prepared to rule on Petitioner's motion. As explained below, the Court finds that Petitioner's motion was timely filed, and accordingly declines to accept the disposition of this matter urged in the Magistrate Judge's R & R. Proceeding to the merits of Petitioner's motion, the Court finds that it must be denied.

## I. **FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner Maurice Adams initially was charged in a 30-count indictment dated November 1, 2001, and then was charged, along with a co-defendant, in a 34-count

superseding indictment dated April 3, 2002.  The superseding indictment charged

Petitioner with seven counts of mail fraud, one count of embezzlement of insurance

premiums, 22 counts of money laundering, three counts of tax evasion, and one count of

obstruction of justice.

On February 5, 2003, after waiving indictment, Petitioner entered a guilty plea

pursuant to a written Rule 11 plea agreement to a two-count superseding criminal

information charging him with embezzlement in connection with health care and tax

evasion.  In accordance with the Rule 11 agreement, the Government moved to dismiss

the April 3, 2002 superseding indictment, and the Court granted this motion in an August

28, 2003 order.

Under their written Rule 11 agreement, the parties agreed to a maximum 33-month

term of imprisonment, and also stipulated that the worksheets attached to the agreement

reflected the parties' understanding of the Sentencing Guideline provisions that applied to

Petitioner's sentence.  In the accompanying worksheet addressing Petitioner's

embezzlement offense, the parties agreed (i) that the amount of loss was greater than $1.5

million but less than $2.5 million, resulting in a 14-level enhancement under U.S.S.G. §

2B1.1(b)(1)(O); (ii) that the offense involved more than minimal planning, resulting in a

two-level enhancement under U.S.S.G. § 2B1.1(b)(4)(A); and (iii) that Petitioner was

subject to a two-level obstruction of justice enhancement under U.S.S.G. § 3C1.1.  In the

worksheet addressing Petitioner's tax evasion offense, the parties agreed (i) that the tax

loss was greater than $550,000, resulting in an offense level of 18 under U.S.S.G. §§

2T1.1 and 2T4.1(M); (ii) that Petitioner's income derived from criminal activity had

exceeded $10,000 per year, resulting in a two-level enhancement under U.S.S.G. §

2T1.1(b)(1); and (iii) that Petitioner again was subject to a two-level obstruction of justice

enhancement under U.S.S.G. § 3C1.1.  Through these stipulated guideline calculations,

the parties arrived at a combined adjusted offense level of 22, along with a three-level

downward adjustment for acceptance of responsibility and a category I criminal history,

resulting in a Sentencing Guideline range of 30 to 37 months.

In addition, the parties' Rule 11 agreement incorporated Petitioner's understanding

and agreement "that the court shall order restitution, pursuant to any available provision

of law, for any loss caused to:  (1) the victims of any offense charged in this case

(including dismissed counts), and (2) the victims of any criminal activity that was part of

the same course of conduct or same scheme or plan as [Petitioner's] charged offenses."

(Rule 11 Plea Agreement at 5.)  Petitioner also agreed to waive his right to appeal his

conviction or sentence, so long as the Court imposed a sentence equal to or less than the

33-month maximum set forth in the agreement.  The agreement further provided that, in

the event that the Court's determination under the Sentencing Guidelines conflicted with

the parties' stipulated calculations as reflected in the agreement, Petitioner could

withdraw his guilty plea or proceed with his plea and risk a higher sentence.

Finally, a bold-face provision directly above Petitioner's signature stated:

> **By signing this document, the defendant acknowledges that he
> has read the entire document, understands it and agrees to its terms
> and also acknowledges that he is satisfied with his attorney's advice**

**and representation.**

(Rule 11 Plea Agreement at 10.)  Immediately above this provision and Petitioner's

signature, the agreement stated that "[t]his offer expires unless it has been received (fully

signed) in the Office of the U.S. Attorney by 5:00 P.M. on December 20, 2002."  (Id. at

9-10.)  Petitioner's signature, however, was dated January 13, 2003, and his counsel's

signature was dated February 4, 2003.

At a February 5, 2003 hearing, the Court addressed Petitioner's guilty plea

pursuant to the parties' Rule 11 plea agreement.  During the course of this hearing, the

Court expressly advised Petitioner of the constitutional rights he was relinquishing as a

result of his waiver of indictment and his guilty plea to the superseding information,

including his right to a jury trial and his right of presentment to a grand jury.  The Court

and counsel then reviewed the terms of the Rule 11 agreement — including its provision

stating that the attached worksheets represented the stipulation of the parties with respect

to all applicable Sentencing Guideline factors — and Petitioner confirmed that this was

the agreement as he understood it.  Finally, Petitioner affirmed (i) that his guilty plea was

freely and voluntarily given, (ii) that he had discussed with his attorney both the charges

to which he was pleading guilty and the terms of the Rule 11 agreement, (iii) that his

counsel had explained these matters to his satisfaction, and (iv) that he was satisfied with

his counsel's representation and the advice he had been given.

Following this plea hearing, an initial presentence investigation report (PSIR) was

prepared on March 12, 2003, reflecting a total offense level of 23 and a Sentencing

Guideline range of 46-57 months. After a meeting between the probation department and counsel, however, several changes were made to this initial PSIR, resulting in a revised PSIR with Sentencing Guidelines calculations that matched those set forth in the parties' Rule 11 plea agreement. Petitioner, through his counsel, filed a number of objections to this second PSIR, and the probation department made several additional revisions to the PSIR in light of these objections.[2]

At a hearing on August 18, 2003, the Court sentenced Petitioner to concurrent 33-month terms of imprisonment on each of the two counts of conviction. Petitioner's counsel stated that he had reviewed the PSIR with his client, and declined the opportunity to place any objections on the record. Petitioner's counsel then noted that, at the February 5, 2003 plea hearing, the Court had reserved its decision whether to accept the Rule 11 plea agreement, and he asked that it be accepted as the product of "long negotiations with the government" and as corroborated by the probation department's calculation of a Sentencing Guidelines range that matched the parties' own determination. Before the sentence was imposed, Petitioner was given an opportunity to address the Court, but he declined to do so.[3] The Court then accepted the Rule 11 plea agreement and

---

[2]Most significantly, the probation department accepted Petitioner's objection that the PSIR overstated (by several hundred thousand dollars) the amount of restitution owed to National Union Fire Insurance Company.

[3]The Court did engage in a discussion with Petitioner, however, about what might have happened to the funds he had embezzled. Apart from his insistence that all of these funds had been lost in unsuccessful investments, Petitioner made no attempt to challenge the statements in the PSIR regarding the amount of loss resulting from his embezzlement offense or the amount of restitution owed. And, as noted, the amount of loss set forth in the PSIR was precisely the same

imposed a 33-month sentence.

Petitioner's sentence was embodied in a judgment signed by the Court on September 11, 2003 and entered on the docket on September 18, 2003, as well as in an amended judgment entered on September 25, 2003 to correct a clerical error in the initial judgment. In accordance with his plea agreement, Petitioner did not appeal his conviction or sentence. The present motion followed on September 2, 2004, with Petitioner advancing four grounds for setting aside his conviction or sentence.

## II. ANALYSIS

**A.     Petitioner's Motion Was Timely Filed Within the One-Year Period of Limitation Set Forth in 28 U.S.C. § 2255.**

As noted at the outset, Petitioner's motion to vacate, set aside, or correct his sentence was referred to Magistrate Judge Donald A. Scheer for a report and recommendation (R & R). In this R & R, the Magistrate Judge recommends that Petitioner's motion be dismissed as untimely filed outside the one-year period of limitation set forth in 28 U.S.C. § 2255, para. 6. The Government has objected to the R & R, however, arguing that Petitioner's motion was timely filed. The Court agrees, and therefore declines to adopt the R & R.

Under the pertinent portion of § 2255 as applied to the circumstances of this case, Petitioner was required to file his motion challenging his conviction and sentence within

_____

as the $1.5 million-$2.5 million range stated in the worksheets accompanying the Rule 11 agreement.

one year after "the date on which the judgment of conviction bec[a]me[] final."  28

U.S.C. § 2255, para. 6(1).  Because Petitioner did not pursue a direct appeal, his

conviction became final ten days after the entry of this Court's judgment.  See Sanchez-

Castellano v. United States, 358 F.3d 424, 428 (6th Cir. 2004); see also Fed. R. App. P.

4(b)(1)(A)(i) (requiring that a defendant must appeal within ten days after the entry of

judgment).  In concluding that Petitioner's motion was untimely, the Magistrate Judge

found that this Court's judgment had been entered on August 18, 2003, the date of

Petitioner's sentencing hearing, and that this judgment became final ten days later, on

August 28, 2003.[4]  Petitioner's motion was filed more than a year after this date, on

September 2, 2004.

As the Government points out, however, the Court's judgment was not entered on

the date of the sentencing hearing.  Rather, as stated earlier, the Court signed the initial

judgment on September 11, 2003, and it was entered on the docket on September 18,

2003.  Under Fed. R. App. P. 4(b)(6), a "judgment or order is entered for purposes of this

Rule 4(b) when it is entered on the criminal docket."  Consequently, Petitioner's ten-day

period for appeal commenced on September 18, 2003, when the initial judgment of

conviction was entered on the docket, and his conviction became final ten days later,

---

[4]This ten-day computation — like the ten-day computations set forth in the Government's objection to the R & R — appears to be incorrect.  Under Fed. R. App. P. 26(a)(2) — like its counterparts, Fed. R. Civ. P. 6(a) and Fed. R. Crim. P. 45(a)(2) — weekends and holidays are excluded when computing time periods of ten days or less.  Accordingly, if the Court's judgment was entered on August 18, 2003, then the ten-day period for an appeal seemingly would have expired on September 2, 2003, the day after the Labor Day holiday.  The Court need not resolve this question, however, in light of its disposition of this issue on different grounds.

upon his failure to file an appeal.

Regardless of whether this ten-day period ended on September 29, 2003 — as the Government contends, noting that September 28, 2003 was a Sunday — or on October 2, 2003 — with the exclusion of intermediate weekends, as seemingly dictated by Fed. R. App. P. 26(a)(2) — it is clear that Petitioner's motion was timely filed less than a year after his judgment of conviction became final. Accordingly, the Court sustains the Government's objection and declines to adopt the R & R.

**B.      Petitioner's Counsel Did Not Provide Ineffective Assistance in Connection With Petitioner's Guilty Plea or Sentence.**

Having determined that Petitioner's motion was timely filed, the Court now turns to the merits of the four claims advanced in this motion. As his first ground for challenging his conviction and sentence, Petitioner asserts that his counsel provided ineffective assistance, at his sentencing hearing and perhaps also in connection with his guilty plea. The Court finds no merit in this claim.

Petitioner's constitutional challenges to the performance of his counsel are governed by the familiar two-pronged standard set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). "First, the defendant must show that counsel's performance was deficient," which entails a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. Next, "the defendant must show that the deficient performance prejudiced the defense," by "showing

that counsel's errors were so serious as to deprive the defendant of a fair trial." 466 U.S. at 687, 104 S. Ct. at 2064. In the specific context of a defendant who pleads guilty, the Supreme Court has explained that such a defendant satisfies the second prong of the Strickland standard by showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would instead have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

Petitioner's claim of ineffective assistance is focused principally, if not exclusively, on his counsel's performance at sentencing. In particular, he appears to fault his attorney for (i) failing to demand a trial by jury as to the Sentencing Guideline factors that affected his sentence, (ii) failing, in the alternative, to seek an evidentiary hearing as to these factors, and (iii) failing to object to the purportedly "inadequate" proof offered by the Government at sentencing. The Court finds no error on any of these points, much less error of constitutional dimension. Neither has Petitioner shown any prejudice resulting from any of these claimed errors.

In asserting that his counsel should have demanded a trial by jury as to the issues that affected the calculation of his sentencing range under the Guidelines, Petitioner appeals to the Supreme Court's rulings in Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004) — which was decided shortly before Petitioner filed his present motion — and United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005) — which was handed down during the course of the briefing on Petitioner's motion. In Petitioner's view, these cases establish his right to have a jury decide each and every issue that

increased his sentencing range under the Guidelines, including the amount of loss attributable to his embezzlement offense, the determination that this offense involved more than minimal planning, and the enhancement for obstruction of justice. Petitioner further contends that his counsel performed deficiently by purportedly failing to protect his jury trial right as recognized in Blakely and Booker.

Petitioner has failed to show either error or prejudice on this point. First, to the extent that he faults his counsel for failing to anticipate the rulings in Blakely and Booker, it is "[o]nly in a rare case" that a court will "find ineffective assistance of counsel based upon a trial attorney's failure to make an objection that would have been overruled under the then-prevailing law." Lucas v. O'Dea, 179 F.3d 412, 420 (6th Cir. 1999) (internal quotation marks and citation omitted). This is not such a case. Rather, under circumstances indistinguishable from those presented here, the Sixth Circuit has held, albeit in an unpublished decision, that counsel did not provide ineffective assistance by failing to anticipate the holdings in Blakely and Booker. See United States v. Burgess, 142 F. App'x 232, 240-41 (6th Cir. June 22, 2005). In Burgess, as here, the defendant pled guilty and was sentenced prior to Blakely, and he did not claim — just as Petitioner cannot argue here —"that the district court sentenced him above the statutory maximums for the crimes to which he pleaded guilty," but only that he should have "receive[d] a sentence *below* what the admitted facts authorized." Burgess, 142 F. App'x at 240. Against this backdrop, the Sixth Circuit held "[a]s a matter of law" that there was "no basis for [the defendant's] assertion that his counsel's failure to predict this novel line of

11

authority fell below an objective standard of reasonableness." 142 F. App'x at 241; see

also United States v. Sistrunk, 2006 WL 1738226, at *5-*6 (E.D. Mich. June 22, 2006).[5]

Nor can Petitioner show any prejudice resulting from his counsel's failure to raise

a challenge based upon the not-yet-issued Blakely and Booker decisions. Booker holds

that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence

exceeding the maximum authorized by the facts established by a plea of guilty or a jury

verdict must be ***admitted by the defendant*** or proved to a jury beyond a reasonable

doubt." Booker, 543 U.S. at 244, 125 S. Ct. at 756 (emphasis added). In this case, the

facts supporting the applicable Sentencing Guidelines enhancements — which, in turn,

determined the sentencing range within which Petitioner was sentenced — were admitted

in the Rule 11 plea agreement.[6] As the Sixth Circuit has recognized in the wake of

Booker, a sentence does not violate the Sixth Amendment under these circumstances, see

---

[5]The Court notes that in Nichols v. United States, 501 F.3d 542 (6th Cir. 2007), a Sixth
Circuit panel held that an attorney had provided ineffective assistance by failing to raise a Sixth
Amendment challenge at trial and on direct appeal in anticipation of the not-yet-issued Booker
decision. The panel's opinion in Nichols has been vacated, however, and *en banc* rehearing has
been ordered. Moreover, a key factor in the panel's decision was that a Sixth Amendment
challenge at trial would have preserved the issue on appeal, by which time Blakely had been
decided. Here, in contrast, Petitioner waived his right of appeal by virtue of his plea agreement.
Finally, the panel in Nichols distinguished the ruling in Burgess as involving a guilty plea that
determined the defendant's Sentencing Guideline range, whereas the sentencing range for the
defendant in Nichols had been increased based upon facts found by the district court at
sentencing. See Nichols, 501 F.3d at 546 n.2. This case, of course, is like Burgess, and not
Nichols, in this respect. Thus, Nichols would not control here, even if it had not been vacated.

[6]Significantly, Petitioner does not claim, at least explicitly, that his guilty plea was not
knowingly and voluntarily given, that he was unfamiliar with the terms of the Rule 11 agreement
he signed, or that his attorney provided ineffective assistance in connection with his guilty plea.
Nor would any such claims be tenable, where the Court questioned Petitioner extensively on
each of these points at the February 5, 2003 plea hearing.

United States v. Dillard, 438 F.3d 675, 684-85 (6th Cir. 2006), and any Sixth Amendment

challenge by Petitioner's counsel would have been to no avail.  Furthermore, even if

Petitioner's counsel had anticipated Booker's remedial ruling and insisted that the

Sentencing Guidelines be treated as advisory rather than mandatory, the Court would

have overruled this objection under then-existing law, and Petitioner's waiver of his right

of appeal would have foreclosed any further pursuit of this issue.  See Dillard, 438 F.3d at

685.[7]  Thus, Petitioner has suffered no prejudice as a result of his counsel's lack of

prescience.

Similarly, Petitioner has failed to establish any error or resulting prejudice in his

counsel's failure to request an evidentiary hearing.  Absent any relevant issues that

remained in dispute, there was no reason to seek such a hearing, and the Court surely

would not have ordered one.  Yet, there *were* no such disputed issues, in light of

Petitioner's stipulation in his plea agreement to all of the facts that determined his

Sentencing Guideline enhancements and sentencing range.  If this were not clear from the

plea agreement alone, one need only consider the various revisions to the PSIR that

Petitioner's counsel sought and successfully obtained.  Although the initial PSIR differed

from the stipulations in the plea agreement in various respects, counsel pointed out these

discrepancies in a meeting with the probation department and in written objections, with

the end result that no such differences remained in the final PSIR.  (See 5/21/2003 PSIR

---

[7]As noted earlier, this waiver serves to distinguish this case from the vacated ruling in
Nichols.

at 14 (stating that "[t]he guideline range anticipated in the Rule 11 Plea Agreement is the same range calculated by the Probation Department").) Not surprisingly, then, counsel saw no need to raise any further objections at the sentencing hearing. Counsel can hardly be faulted for achieving precisely the outcome that Petitioner agreed to in the Rule 11 agreement, nor can Petitioner establish any prejudice from having received the full benefit of the bargain he made.[8]

To be sure, Petitioner did not stipulate in his plea agreement to the amount of restitution ordered by the Court. Once again, however, his counsel successfully objected on his behalf to the amounts of restitution recommended in the initial PSIR. Specifically, the initial PSIR recommended restitution of over $1.6 million to National Union Fire Insurance Company and over $830,000 to the IRS, but these amounts were reduced to less than $1.1 million and $0, respectively, in the final PSIR used to sentence Petitioner. Each of these two substantial reductions was a direct result of the objections raised by Petitioner's counsel. This, needless to say, is hardly indicative of deficient performance.

Indeed, Petitioner himself evidently did not believe at the time of his sentencing that there were any further objections to be made on this score, as he did not avail himself

---

[8]At various points in his motion, Petitioner suggests that his Rule 11 agreement was not legally binding because he signed it after the expiration date of the Government's plea offer as set forth in the agreement itself. This expiration date, however, was a condition imposed **by the Government** on **its** plea offer. Plainly, then, the Government was free to waive this condition and go forward with the plea agreement despite Petitioner's untimely acceptance of the offer. Indeed, as the Government points out in its response to Petitioner's motion, the Government's willingness to go forward reflects favorably, not poorly, upon the performance of Petitioner's counsel, who was able to secure a plea agreement for his client even after the Government's offer had expired.

of a clear opportunity at the sentencing hearing to challenge the amount of restitution, even when the Court engaged him in a direct discussion about what might have happened to the funds he had obtained as a result of his embezzlement offense. In explaining how this money had been lost through unsuccessful business ventures, Petitioner never once objected to the $1.6 million figure referenced in the Court's inquiry. Under these circumstances, where neither Petitioner nor his counsel challenged the restitution amounts recommended in the final PSIR, these amounts were properly deemed admitted and incorporated into the final judgment, and there would have been no purpose in requesting an evidentiary hearing. See United States v. Adkins, 429 F.3d 631, 632-33 (6th Cir. 2005) (holding that facts in a PSIR to which no objection is made are deemed admitted, so that the failure to submit such facts to a jury does not violate the Sixth Amendment right to a jury trial as recognized in Booker).[9]

---

[9]Even now, Petitioner notably does not assert in his motion or accompanying affidavit that he brought any facts to the attention of his counsel that would have provided a basis for challenging the Court's determination of restitution. Rather, he vaguely suggests that counsel should have been aware of a purported factual basis for such a challenge (beyond, of course, the challenge that his counsel successfully pursued) — namely, that the Court's order of restitution should have been further reduced by the amounts allegedly recovered by the victims of his embezzlement in the course of related state-court civil litigation.

Petitioner, however, has failed to identify any evidentiary support for this claim of prior reimbursement. Although he asserts in his affidavit that the state court placed a restraining order on his business accounts and entered a judgment against him, he does not identify any sums that actually passed from him to the victims of the embezzlement offense in this case, such that these amounts could be viewed as a set-off against the restitution ordered by this Court. To the contrary, he acknowledges that National Fire Insurance Company paid over $1.6 million to the state-court plaintiff "for the losses identified in the [state-court] litigation." (Petitioner's Aff. at ¶7.) This insurance company, of course, was the principal recipient of the restitution ordered in the judgment in this case.

Likewise, just as Petitioner's counsel did not err in failing to request an evidentiary hearing, there was no error in counsel's failure to challenge any purported deficiencies in the proofs offered by the Government at sentencing. Again, because no pertinent facts remained in dispute, and because Petitioner and his counsel did not raise any additional objections to the final PSIR, there was no need for the Government to offer any further proof at sentencing. Consequently, Petitioner's counsel did not perform deficiently by failing to call for additional proofs, and Petitioner was not prejudiced by his counsel's failure to mount such a futile challenge.

## C. Petitioner's Remaining Challenges to His Conviction and Sentence Lack Merit.

The remaining three claims advanced in Petitioner's motion warrant little discussion. First, he contends that his Fifth Amendment due process rights were violated at sentencing, either because the Court made factual determinations that increased his Sentencing Guidelines range, or because the Court made these determinations without conducting an evidentiary hearing. Yet, to the extent that this due process challenge rests upon the Supreme Court's <u>Booker</u> decision, the Sixth Circuit has held that <u>Booker</u> does not apply retroactively to collateral challenges under § 2255 to convictions and sentences that were final before <u>Booker</u> was decided. <u>See</u> <u>Humphress v. United States</u>, 398 F.3d 855, 860-63 (6th Cir. 2005). In any event, the Court already has explained that Petitioner's sentence does not run afoul of <u>Booker</u>'s constitutional ruling, because Petitioner admitted to the facts that determined the applicable Sentencing Guideline

16

range. For the same reason, Petitioner's due process rights were not violated through the

lack of an evidentiary hearing at sentencing, where there were no disputed facts to be

resolved at such a hearing.

Petitioner next contends that his Sixth Amendment right to a jury trial was violated

when his sentencing range was increased on the basis of facts that were not found by a

jury beyond a reasonable doubt. Again, this claim rests squarely upon Booker, which is

not applicable to Petitioner's collateral attack upon his conviction and sentence. And,

once again, Booker itself expressly states that the Sixth Amendment right to a jury trial is

not violated where the operative facts that determine a sentence are "admitted by the

defendant," Booker, 543 U.S. at 244, 125 S. Ct. at 756, as they were here.

Finally, Petitioner claims that his Fifth Amendment rights were violated because

the offenses to which he pled guilty were never presented to a grand jury. Yet, upon

entering his guilty plea to the two-count superseding information, Petitioner expressly

waived his right to a grand jury indictment, and the Court confirmed at the February 5,

2003 plea hearing that this was a knowing waiver.[10]

To the extent that Petitioner means to suggest more narrowly that the Court

improperly ordered restitution without presentment to a grand jury or findings by a jury

beyond a reasonable doubt, this claim fails on multiple scores. First, Petitioner's appeal

---

[10]The Court is puzzled by Petitioner's apparent assertion in his affidavit in support of his motion that he was convicted of an offense under 18 U.S.C. § 669 that was not "charged in the superseding information." (Petitioner's Aff. at ¶ 20.) In fact, count one of the superseding information expressly charges Petitioner with violating this statute.

to <u>Blakely</u> and <u>Booker</u> in support of this challenge is unavailing, where these decisions are not retroactively applicable here, and where, in any event, the Sixth Circuit has held that <u>Booker</u> does not preclude judicial determinations of the facts underlying a restitution order. See <u>United States v. Sosebee</u>, 419 F.3d 451, 460-62 (6th Cir. 2005). Next, Petitioner expressly acknowledged in the Rule 11 plea agreement that "the court shall order restitution, pursuant to any available provision of law," with the amount to be "determined based on the offense and all relevant conduct of the defendant." (Rule 11 Plea Agreement at 5.) As explained earlier, he and his counsel raised no further objections at sentencing after successfully reducing the amounts of restitution to the figures that appeared in the final PSIR. In the absence of objections, these amounts were deemed admitted, and there was no need for the Court or a jury to hear evidence or resolve any disputed facts.

**D. An Evidentiary Hearing Is Not Warranted.**

Petitioner's § 2255 motion was accompanied by a motion for an evidentiary hearing. The Court finds that such a hearing is unnecessary in this case, however, as the record alone — including Petitioner's plea agreement and the transcripts of the plea and sentencing hearings — conclusively establishes that Petitioner is not entitled to relief. See <u>Arredondo v. United States</u>, 178 F.3d 778, 782 (6th Cir. 1999). The assertions made in Petitioner's § 2255 motion and accompanying affidavit do not alter this conclusion, because they do not raise any issues of material fact that would need to be addressed or resolved at an evidentiary hearing in order to decide Petitioner's claims. Accordingly, the

Court denies Petitioner's motion for an evidentiary hearing.

### III.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that the Government's objection to the Magistrate Judge's R & R is SUSTAINED, and that the Court therefore declines to adopt the R & R.  IT IS FURTHER ORDERED that Petitioner's September 2, 2004 motion to vacate, set aside, or correct his sentence is DENIED.  IT IS FURTHER ORDERED that Petitioner's September 2, 2004 motion for evidentiary hearing also is DENIED.  IT IS FURTHER ORDERED that the various motions filed by Petitioner while his § 2255 motion was pending (docket entries 49, 58, 66, 67, 73, and 79) also are DENIED, as the relief sought in each of these motions is predicated on the success of the claims asserted in Petitioner's underlying § 2255 motion.  IT IS FURTHER ORDERED that Petitioner's several motions filed on March 10, 2006 (docket entries 80, 81, 82, and 83) concerning an apparent dispute with the Internal Revenue Service are DENIED WITHOUT PREJUDICE, as the matters raised in these motions lie outside the purview of the criminal case before this Court.

Finally, in the event that Petitioner might elect to appeal from the Court's denial of his motion under § 2255, the Court finds that a certificate of appealability should be

DENIED as to all of the claims asserted in Petitioner's § 2255 motion for lack of a

substantial showing of the denial of a constitutional right.


                                  s/Gerald E. Rosen
                                  Gerald E. Rosen
                                  United States District Judge

Dated:  March 21, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record
on March 21, 2008, by electronic and/or ordinary mail.

                                  s/LaShawn R. Saulsberry
                                  Case Manager